UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JULIA HECK, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC.; AUDIBLE, INC.,<br><br>Defendants. | CASE NO. 2:23-cv-01219-JHC<br><br>ORDER DENYING MOTION TO DISMISS |

# I

## INTRODUCTION

This matter comes before the Court on Defendants Amazon.com, Inc. and Audible, Inc.'s Motion to Dismiss Plaintiff's Third Amended Complaint (TAC). Dkt. # 95.

Plaintiff Julia[1] Heck brings this action individually and on behalf of a putative class of similarly situated individuals. She alleges that Amazon offered its Prime members "a digital

---

[1] Plaintiff is called "Julie Heck" in the caption of the TAC (Dkt. # 94), and in the caption of her opposition papers to Defendants' motion to dismiss (Dkt. # 97), but she is called "Julia Heck" in the body of the TAC and the caption of Defendants' motion to dismiss. *See* Dkts. ## 94, 95. Given the lack of clarity, the Court uses "Julia Heck" because the Docket and the Court's prior orders use the same. *See* Dkts. # 48, 91.

ORDER DENYING MOTION TO DISMISS - 1

reward" in exchange for choosing "FREE No-Rush Shipping." Dkt. # 94 at 2 ¶ 5. But when a Prime member redeemed the "digital reward," Amazon sent the member's personal information, including payment information, to Audible[2] who enrolled them in a 30-day trial membership that, without affirmative cancellation, automatically became a paid membership with a monthly fee. *Id.* Heck brings claims under California law. *See generally* Dkt. # 94. Defendants seek dismissal, contending that the TAC fails to state a claim upon which relief can be granted. For the reasons below, the Court DENIES the motion.

## II

### BACKGROUND

The factual background in this section derives from Heck's allegations in the TAC, *see* Dkt. # 94, which the Court accepts as true for a Rule 12(b)(6) motion to dismiss.

Defendant Amazon is an internet-based company that provides goods and services to consumers in areas such as "e-commerce, logistics, payment, hardware, data storage, and media." Dkt. # 94 at 1 ¶ 1. Amazon offers its customers "Prime Membership," which provides "shipping shopping, streaming, reading, and other benefits." *Id.* at 1 ¶ 2. "One of the benefits of Prime Membership is free 2-day shipping on many items." *Id.* at 3 ¶ 14. Amazon also offers Prime members "FREE No-Rush Shipping." *Id.* If a Prime member selects the No-Rush Shipping option, they can "receive a reward toward e-books, digital movies, and music." *Id.* at 3, 12 ¶¶ 14, 55 (internal citation omitted).

Defendant Audible "is a wholly owned subsidiary of Amazon" that provides customers with "downloadable and streaming audio content for a monthly fee." *Id.* at 2 ¶ 3. Heck says

---

[2] Audible is a wholly-owned subsidiary of Amazon and describes itself as "the leading creator and provider of premium audio storytelling" and "the largest producer of audiobooks in the world." Dkt. # 94 at 3 ¶ 12 (internal citation omitted).

that, for years, Amazon and Audible "targeted Prime members for enrollment in Audible through a process that was likely to deceive reasonable consumers." *Id.* at 2 ¶ 4.

Heck states that around June 29, 2017, she became an Amazon Prime member. *Id.* at 8 ¶ 36. Thereafter, Amazon emailed her, confirming her membership and detailing Prime benefits, including "access to . . . original audio series from Audible." *Id.* (internal citation omitted) (alteration in original). She contends that during the checkout process for her purchases through Prime, Amazon gave her the option of selecting "FREE No-Rush Shipping" that provided a "$1 reward for select digital purchases." *Id.* at 8 ¶ 37. She says that on or before March 1, 2021, she "purchased items from Amazon for which she thought she received 'digital rewards' by selecting the 'FREE No-Rush Shipping' option." *Id.* at 9 ¶ 40. Heck alleges that after she used the purported "digital rewards," Amazon provided Audible with her information, and Audible enrolled her in a "free trial membership without her knowledge or permission." *Id.* at 9 ¶¶ 40, 42. Heck says that the credit card connected with the Audible membership was her American Express credit card that she had saved in her Amazon "digital Wallet" and had used to buy the items through Prime's No-Rush Shipping. *Id.* at 9 ¶ 41. After the 30-day free trial membership ended, Audible charged Heck $14.95 a month starting on April 1, 2021, and until July 1, 2021. *Id.* at 9–10 ¶ 43. Heck says she was charged $59.80 for an "unknown, unwanted, and unauthorized" Audible membership. *Id.*

Heck alleges that she "was never informed that by using what she thought was a 'digital reward' by selecting the 'FREE No-Rush Shipping' option on her Amazon Prime purchases, that she would be enrolled in an Audible membership." *Id.* at 10 ¶ 46. She did not know that she was subscribed to Audible until July 22, 2021, after which she contacted Audible and cancelled the membership. *Id.* Heck says that before and after she was enrolled in the Audible subscription, she did not receive any emails or other written communications from Amazon

ORDER DENYING MOTION TO DISMISS - 3

informing her "of the terms of any offer for a subscription to Audible, the cancellation policy, or information regarding how to cancel the subscription." *Id.* at 10 ¶ 47.

On March 18, 2024, Heck filed the TAC. *See* Dkt. # 95. She contends, on behalf of herself and a class of similarly situated individuals, that Defendants violated (1) California's Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq.*; and (2) California's Unfair Competition Law (UCL), California Business and Professions Code § 17200, *et seq*. *Id.* Amazon moves to dismiss, contending that the TAC fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6); Dkts. ## 95, 99.

### III
#### DISCUSSION

*Rule 12(b)(6).* When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court construes the complaint in the light most favorable to the nonmoving party. *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556). "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A court may also "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of

judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

*Rule 9(b).* The heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies when fraud is an essential element of a claim, or the claim is "grounded in" fraudulent conduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). As the Court noted in a prior order, the parties agree that the heightened pleading standard applies to Heck's claims. *See* Dkt. # 91 at 4.

When alleging "fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). The allegations need to "be specific enough to give defendants notice of the particular misconduct." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Rule 9(b) applies in federal cases "'irrespective of the source of the subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal.'" *Id.* at 1125 (quoting *Vess*, 317 F.3d at 1102) (holding that Rule 9(b) applies to claims brought under California consumer protection law).

Also, "[w]hile plaintiffs are generally required to specifically identify the role of each defendant in an alleged fraudulent scheme, courts are willing to relax this [Rule 9(b) pleading] standard in certain situations" when the exact details of the fraudulent conduct are solely within the knowledge of the individual perpetuating the fraud. *Munning v. Gap, Inc.*, No. 16-CV-03804, 2016 WL 6393550, at *3 (N.D. Cal. Oct. 28, 2016) (citing *Moore v. Kayport Package Express Inc.*, 885 F.2d 531, 540 (9th Cir. 1989); *Sussex Fin. Enters, Inc. v. Bayerische Hypo-Und Vereinsbank AG,* No. 08-cv-4791, 2010 WL 94272, at *3 (N.D. Cal. Jan. 6, 2010)). Under

ORDER DENYING MOTION TO DISMISS - 5

those conditions, "Rule 9(b) may be relaxed as to matters within the opposing party's knowledge." *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 567 (9th Cir. 2017) (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)); *see also Concha v. London,* 62 F.3d 1493, 1503 (9th Cir. 1995) ("[I]n cases where fraud is alleged, we relax pleading requirements where the relevant facts are known only to the defendant."). The Ninth Circuit has also said that "[t]he *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)) (alteration in original).

Defendants move to dismiss, contending that (1) Heck failed to provide proper CLRA notice; (2) the TAC fails to state a plausible CLRA claim; and (3) the TAC fails to state a plausible UCL claim. *See generally* Dkt. # 95.

A.     CLRA Notice Requirement

Section 1782(a) of the CLRA requires that a plaintiff provide notice "thirty days or more prior to the commencement of an action for damages." Cal. Civ. Code § 1782(a). The notice must be in writing and inform the "person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770. Cal. Civ. Code § 1782(a)(1). It must also "[d]emand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770." Cal. Civ. Code § 1782(a)(2).

In the January 23, 2024, order resolving Defendants' motion to dismiss the Second Amended Complaint (SAC), the Court dismissed Heck's CLRA claim without prejudice for

failure to provide Defendants with a notice letter that cited the specific provisions of Section 1770 that Defendants allegedly violated.  *See* Dkt. # 91 at 10.  On January 29, 2024, Heck's counsel sent a new CLRA notice letter to Defendants' counsel who accepted service on behalf of Defendants.  *See* Dkt. # 94-9 at 2.  The notice letter specifies which sections of the CLRA that Defendants purportedly violated.  *Id.* at 3 (stating that Defendants allegedly violated Sections 1770(a)(5), 1770(a)(14), and 1770(a)(16) of the California Civil Code).  On February 27, 2024, Defendants' counsel responded to the notice letter asserting that Heck's "factual allegations are false."  Dkt. # 94-10.  On March 4, 2024, Heck's counsel replied to the response letter stating that they investigated Heck's claims, and she has valid bases to assert claims on behalf of herself and a putative class.  *See* Dkt. # 94-11 at 2.

Defendants contend that Heck "has again failed to provide Defendants with valid pre-suit notice of her CLRA claims."  Dkt. # 95 at 16.  They say that Heck's January 29 and March 4 letters "fail to provide notice of the factual assertions in the TAC."  *Id.*  Heck responds that she complied with the CLRA notice provision and the Court's prior order.  Dkt. # 97 at 14.  She says that she sent a notice letter that includes citations to the provisions of Section 1770 that Defendants purportedly violated.  *Id.*

Heck's January 29 notice letter states that one way "Amazon tricked its Prime members into paying for an unwanted Audible membership . . . was by Amazon offering 'FREE No-Rush Shipping' in exchange for a 'digital reward.'"  Dkt. # 94-9 at 2.  It says, "Unbeknownst to Prime members, that 'digital reward' was enrollment in a 30-day 'free' trial membership with Audible."  *Id.*  The letter also alleges that Amazon provided Audible with the personal information of Prime members who accepted the "digital reward," and then Audible enrolled these members in a trial membership that automatically turned into a paid membership with a monthly fee if the Prime member failed to cancel the membership before the trial period expired.

ORDER DENYING MOTION TO DISMISS - 7

*Id.* These allegations are also in the TAC. *Compare* Dkt. # 94 at 2–3 ¶¶ 5, 15 *with* Dkt. # 94-9 at 2. The TAC states, "Amazon tricked its Prime members into paying for an unwanted Audible membership . . . was by Amazon offering 'FREE No-Rush Shipping' in exchange for a 'digital reward.'" Dkt. # 94 at 2 ¶ 5. The TAC also describes the very same process of how Prime members, without their knowledge or consent, were allegedly enrolled in Audible. *Id.*

As other courts have stated, the purpose of the CLRA notice requirement is "'to give the manufacturer or vendor *sufficient notice* of alleged defects to permit appropriate corrections or replacements.'" *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 1001 (N.D. Cal. 2007) (emphasis added) (quoting *Outboard Marine Corp. v. Superior Court,* 52 Cal. App. 3d 30, 40, 124 Cal. Rptr. 852 (1975) ("The clear intent of the act is to provide and facilitate precomplaint settlements of consumer actions wherever possible and to establish a limited period during which such settlement may be accomplished."). Heck's January 29 and March 4 notice letters claim three violations of the CLRA and describe the actions Defendants allegedly took that Heck contends violated the CLRA. The January 29 notice letter contains the very same language as the TAC about the Audible membership enrollment. Thus, Heck provided Defendants with sufficient notice of the alleged CLRA violations.

B.      Plausibility of CLRA Claim

Amazon contends that Heck has failed to state a CLRA claim because (1) "the TAC does not identify *any* conduct by Defendants . . . that purportedly deceived" Heck; and (2) the TAC "does not allege reliance on any misrepresentation or omission, or causation of damages." Dkt. # 95 at 13, 15 (emphasis in original).

"To state a claim under the CLRA, a plaintiff generally must allege a misrepresentation, reliance, and damages." *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1046 (N.D. Cal. 2020).

ORDER DENYING MOTION TO DISMISS - 8

Heck alleges that Defendants violated Sections 1770(a)(5), (a)(14), and (a)(16) of the CLRA. *See* Dkt. # 94 at 17 ¶ 80.

        1.   Misrepresentation

"A plaintiff can state a claim under the CLRA by alleging either an affirmative misrepresentation or a failure to disclose." *Bird v. First Alert, Inc.*, No. C 14-3585 PJH, 2015 WL 3750225, at *9 (N.D. Cal. June 15, 2015). When a CLRA claim is based on a failure to disclose, the omission must be "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1112 (N.D. Cal. 2016) (quoting *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 996 (N.D. Cal. 2013)). The obligation to disclose arises, in pertinent part, "[(1)] when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; [(2)] when the defendant actively conceals a material fact from the plaintiff; and [(3)] when the defendant makes partial representations that are misleading because some other material fact has not been disclosed." *Rojas-Lozano*, 159 F. Supp. 3d at 1112–13 (quoting *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255 (2011)).

Defendants assert that Heck "fails to allege the what or how of the conduct she says resulted in her supposedly unwitting Audible enrollment." Dkt. # 95 at 13. They say that Heck's allegation that she "used what she thought were the 'digital rewards' from the 'FREE No-Rush Shipping' option," Dkt. # 1 at 9 ¶ 40, only shows that Heck "used something" that resulted in her enrollment in Audible. Dkt. # 95 at 14. Defendants state that "the TAC's revised allegations do not show that 'No-Rush Shipping' has anything to do with" Heck's enrollment in Audible. *Id.* at 13. They also contend that, at most, Heck alleges that she selected the No-Rush Shipping option "on or before" the date of her Audible enrollment and that the same credit card was charged for the Prime purchases and the Audible membership. *Id.* at 14. Defendants thus say that Heck

ORDER DENYING MOTION TO DISMISS - 9

"falls short of Rule 9(b)'s heightened pleading standard" because she identifies no misrepresentation or failure to disclose about No-Rush Shipping, the purported rewards, or her enrollment in Audible.³ *Id.*

Heck responds that the Court has already rejected Defendants' argument that she failed to allege what or how Amazon engaged in misrepresentation or omission. Dkt. # 97 at 11. She contends that the Court already said that her "allegations center on the Audible subscription[.]" *Id.* (quoting Dkt. # 91 at 11) (alteration in original). Heck states that the TAC, like the SAC, claims that Defendants had an obligation to disclose facts of which they had exclusive knowledge. *Id.* (citing Dkts. # 94 at 12 ¶¶ 54–56; # 49 at 10–11 ¶¶ 51–53).

The Court agrees with Heck. The TAC alleges that

> Amazon offered Prime members "FREE No-Rush Shipping," through which Amazon offered a digital reward in exchange for delayed delivery of an order placed through Amazon Prime. Unbeknownst to Prime members, when Prime Members used what they thought were "digital rewards", Amazon passed their personal information—including credit card information on file in Prime members' digital Wallets—to Audible who then enrolled Prime members in a membership to Audible's services. After the 30-day trial period, Audible charged a monthly fee for a paid subscription to its services that the customer neither asked for nor used.

Dkt. # 94 at 12 ¶ 54. It also alleges that Amazon's statements that Prime members would "earn a digital reward . . . toward e-books, digital movies, and music" gave rise to its "duty to disclose that, in addition to receiving and using what consumers thought were those 'rewards' for

---

³ Defendants also contend that Heck "fails to allege specific facts about what *Audible* allegedly misrepresented or failed to disclose." Dkt. # 95 at 15 (emphasis in original). They say that the TAC does not allege facts about Audible's role in the purported fraud. *Id.* at 15 (citing Dkt. # 48 at 5) (order resolving Defendants' first motion to dismiss). In its order resolving Defendants' second motion to dismiss, the Court noted that Heck alleged in the SAC that Audible was "a subsidiary of Amazon and that Plaintiff's Audible subscription could be viewed and managed through her Amazon Prime account." Dkt. # 91 at 14 (citing Dkt. # 49 at ¶ 3; Ex. 6). The Court concluded that because of "the close relationship between Amazon and Audible 'lumping the defendants together is arguably less likely to frustrate notice of the claims as to any particular defendant.'" *Id.* (quoting *Sussex Fin. Enterprises, Inc. v. Bayerische Hypo-und Vereinsbank AG*, 2010 WL 94272, at *3). In the TAC, Heck maintains her allegation that Audible is a "wholly-owned subsidiary of Amazon." Dkt. # 94 at 3 ¶ 12. Thus, the Court's prior reasoning applies here.

selecting 'FREE No-Rush Shipping,' Amazon would pass along the customer's information—including payment information—to Audible and that Audible would then enroll the customer into a membership for Audible's subscription services." *Id.* at 12 ¶ 55. The TAC also alleges that Amazon had a duty to disclose this information to consumers "because it had exclusive knowledge that it would pass along the customers' information—including payment information—to Audible when its Prime customers used what they thought were so-called 'digital rewards' when they agreed to "FREE No-Rush Shipping.'" *Id.* at 12 ¶ 56.

Heck's allegations in the TAC are substantially similar to her allegations in the SAC. The Court, in its order resolving Defendants' motion to dismiss the SAC, observed that the SAC alleged that "Amazon's duty to disclose arose because it promised Plaintiff and class members a 'reward' for choosing 'FREE No-Rush Shipping,' but did not disclose that the 'reward' included a free 30-day trial for Audible, which would turn into a paid subscription after the trial period." Dkt. # 91 at 12 (quoting Dkt. # 49 at 10–11 ¶¶ 52–53). The SAC also stated that "Amazon misrepresented what the 'reward' would be by not disclosing that it would be a subscription to Audible." *Id.* (quoting Dkt. # 49 at 10–11 ¶¶ 52–53). In its prior order, the Court concluded that Defendants had an obligation to disclose that Prime members would be subscribed to a 30-day free Audible membership because they had "exclusive knowledge" of this information. *Id.* The Court reasoned that Defendants had made "'partial representations' by disclosing some of the 'benefits'" of selecting the No-Rush Shipping option. *Id.* (quoting *Rojas-Lozano*, 159 F. Supp. 3d at 1112–13).

The same reasoning applies here. Contrary to Defendants' contention that the TAC fails to state "the what or how of the conduct" that led to Heck's purported enrollment in Audible, Heck alleges that when she redeemed purported "digital rewards" that Amazon offered in exchange for "FREE No-Rush Shipping," Amazon passed her information to Audible who then

ORDER DENYING MOTION TO DISMISS - 11

enrolled her in a 30-day free trial membership that automatically converted into a paid membership. *See* Dkt. # 94 9, 12 ¶¶ 40, 54; *see also* Dkt. # 91 at 7 ("In this case, the exact way that Defendants enrolled [Heck] in an Audible subscription is 'particularly within the possession and control' of Amazon and Audible.") (quoting *Arista Records, LLC*, 604 F.3d at 120). Thus, the TAC plausibly alleges that Defendants had an obligation to disclose the Audible subscription, and their failure to disclose was an omission under the CLRA. The TAC also meets the Rule 9(b) pleading standard because the allegations are "specific enough to give [D]efendants notice of the particular misconduct." *Kearns*, 567 F.3d at 1124.

      2.   Reliance and Causation

Defendants contend that Heck's CLRA claim also fails because she "does not allege reliance on any misrepresentation or omission, or causation of damages." Dkt. # 95 at 15 (internal citation omitted). They say that Heck "makes a flimsy attempt" at establishing reliance and causation by alleging that she would not have selected the No-Rush Shipping option or would have cancelled the Audible trial membership before it converted to a paid membership. *Id.* Defendants also assert that Heck "cannot rely on other customers' purported online complaints about Audible" and must show that she was personally injured. *Id.* at 16 (quoting Dkt. # 94 at 4–7 ¶¶ 18–33; *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).

In its order resolving Defendants' motion to dismiss the SAC, the Court determined that Heck pleaded reliance by alleging that she would not have chosen No-Rush Shipping if she had known that she would be enrolled in an Audible subscription. Dkt. # 91 at 13. Heck thus asserts that the Court has already rejected Defendants' argument that she "failed to plead particularized facts explaining how she relied on any false statements about No-Rush Shipping." Dkt. # 97 at 11. Heck contends that she makes "materially the same allegations" in the TAC as she did in the SAC, and thus "her CLRA claim remains sufficiently pled." *Id.* at 12.

ORDER DENYING MOTION TO DISMISS - 12

The TAC states that, before and while Heck was subscribed to Audible, she "did not receive any emails or other written communications from Amazon that informed her of the terms of any offer for a subscription to Audible, the cancellation policy, or information regarding how to cancel the subscription." Dkt. # 94 at 10 ¶ 47. The TAC also alleges that had Defendants informed Heck "in a clear and conspicuous manner" that she would be enrolled in an Audible membership after using the purported "digital rewards" she had received by choosing No-Rush Shipping for her Prime purchases, she would have either "1) not selected the 'FREE No-Rush Shipping' option or used what she thought were the 'digital rewards'; and/or 2) taken steps to cancel the Audible membership before she was charged for it." Dkt. # 94 at 11 ¶ 51. Heck also alleges that because of Defendants' actions, she was charged $14.95 a month, for a total of $59.80. *Id.*

Taking Heck's well-pleaded facts as true, and drawing all reasonable inferences in her favor, the Court concludes that the TAC adequately alleges reliance and causation of damages for purposes of her CLRA claim. *See Rojas-Lozano*, 159 F. Supp. 3d at 1114 (determining, on a Rule 12(b)(6) motion, that the plaintiff did not adequately plead reliance for purposes of her CLRA claim because she "failed to allege what she saw, what she believed as a result, how knowledge would impact her behavior, or facts that otherwise support a reasonable inference that an omitted fact was material"); *see also Maisel v. Tootsie Roll Indus., LLC*, No. 20-CV-05204-SK, 2021 WL 3185443, at *5 (N.D. Cal. July 27, 2021) (stating that there are "innumerable ways in which economic injury from unfair competition may be shown" such as being "required to enter into a transaction, costing money or property, that would have been unnecessary") (quoting *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 323 (2011)).

C.     Plausibility of UCL Claim

Defendants contend that Heck fails to plead a plausible UCL claim. Dkt. # 95 at 17. They say that her claims brought under the "unlawful" conduct and the "unfair" or "fraudulent" conduct prongs of the UCL fail because she "does not allege what conduct supposedly deceived her or how that unidentified conduct caused her Audible enrollment." *Id.* Defendants also argue that Heck fails to establish causation and injury under the UCL "because she does not identify any specific aspects of the enrollment process that caused her harm." *Id.*

The UCL prohibits "unlawful, unfair, or fraudulent business act[s] or practice[s]." Cal. Bus. & Prof. Code § 17200. "Each of the three 'prongs' of the UCL provides a 'separate and distinct theory of liability' and an independent basis for relief." *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 692 (N.D. Cal. 2021) (quoting *Rojas-Lozano*, 159 F. Supp. 3d at 1117); *see also Bruton v. Gerber Prods. Co.*, 703 Fed. App'x. 468, 471 (9th Cir. 2017) (stating that claims brought under the unlawful conduct prong of the UCL are treated as "independently actionable").

1.  Unlawful Conduct: California's Auto Renewal Law

The unlawful conduct prong of the UCL bars "anything that can be called a business practice and that at the same time is forbidden by law." *Lopez*, 519 F. Supp. 3d at 692 (internal quotation and citations omitted). The TAC alleges violations of the CLRA (discussed above) and California's Auto-Renewal Law (ARL), Cal. Bus. & Prof. Code § 17602. *See* Dkt. # 94 at 17–19 ¶¶ 80, 90–92.[4]

The TAC alleges that Defendants' violated each of these requirements of the ARL: (1) a business must "present the automatic renewal offer terms or continuous service offer terms in a

---

[4] Based on the analysis above, the Court rejects Defendants' contention that the TAC fails to state a claim under the unlawful prong of the UCL for violating the CLRA. *See, e.g.*, Dkt. # 95 at 17.

ORDER DENYING MOTION TO DISMISS - 14

clear and conspicuous manner before the subscription or purchasing agreement is fulfilled"; (2) a business may not "[c]harge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent"; and (3) a business must "provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer." Cal. Bus. & Prof. Code § 17602(a)(1) – (3); *see also* Dkt. # 94 at 19–20 ¶¶ 91–93.

Defendants assert that Heck fails to state a violation of the ARL. Dkt. # 95 at 17–18. They contend that Heck has "abandoned the SAC's allegation that Defendants violated the ARL by enrolling Plaintiff in Audible automatically, and now vaguely alleges that whatever process she 'used' (she does not say) failed to provide 'clear and conspicuous notice' of Audible enrollment." *Id.* at 18 (quoting Dkt. # 94 at 10 ¶ 44). As to Heck's claim under ARL Section 17602(a)(3), Defendants say that Heck has failed to cure "the deficiencies the Court identified concerning her threadbare allegations that Defendants failed to provide an acknowledgment after Plaintiff enrolled in Audible." *Id.*

Heck counters that the Court has already concluded that she alleged a violation of the UCL, and the only deficiency the Court identified concerned her claim under the UCL's unlawful prong for a violation of ARL Section 17602(a)(3). Dkt. # 97 at 12 (citing Dkt. # 91 at 15–17). Heck says that the TAC alleges "additional factual 'allegations as to whether she received emails from Amazon regarding the order, the digital reward, or the Audible subscription.'" *Id.* at 12–13 (quoting Dkt. # 91 at 16).

In its prior order, the Court determined that Heck stated unlawful conduct claims under the UCL based on alleged violations of Sections 17602(a)(1) and 17602(a)(2) of the ARL. In the SAC, Heck alleged that she had not been provided with "'clear and conspicuous notice that she

ORDER DENYING MOTION TO DISMISS - 15

had been enrolled in an Audible membership' because she never saw any offer or terms from either Amazon or Audible." Dkt. # 91 at 16 (quoting Dkt. # 49 at 8–9, 17 ¶¶ 41, 45, 88). She also said that Audible, without her authorization, charged her credit card connected to her Amazon account for an Audible membership. *Id.* (citing Dkt. # 49 at 9 ¶¶ 44, 46; 49-6 (Exhibit 6)). Heck makes identical allegations in the TAC, which states that, because Heck had not been provided with "clear and conspicuous notice that she had been enrolled in an Audible membership, she was unaware that she was required to take steps to cancel the membership prior to April 1, 2021 or would be charged for the unknown, unwanted, and unauthorized Audible subscription." Dkt. # 94 at 10 ¶ 44.

Amazon also contends that the Court should follow *Viveros v. Audible, Inc.*, No. C23-0925JLR, 2023 WL 6960281, at *1 (W.D. Wash. Oct. 20, 2023), because of its factual similarities. Dkt. # 99 at 13. In *Viveros*, the plaintiffs claimed that Audible violated California's ARL; they alleged that when they signed up for 30-day free Audible trials, these trials were automatically converted to paid memberships. *Viveros*, 2023 WL 6960281, at *1. The court determined that the price and the auto-renewal at the end of the free trial were clearly and conspicuously disclosed because the relevant information "appear[ed] in the only underlined text on Audible's enrollment page" and "[s]everal disclosures are reiterated in a box in the upper left of the 'Check Out' page, including the amount of each monthly charge, that the charges begin after 30 days." *Id.* at *7.

*Viveros* is distinguishable in key aspects. First, the plaintiffs there signed up for an Audible membership and provided their billing information directly to the company. *Id.* at *2. Second, in resolving the plaintiffs' claims based on alleged violations of the ARL, the court relied on the fact that the "'Check Out' page informs the subscriber that they may '[c]ancel anytime' by visiting 'Account Details,' and the paragraph above this language includes a blue

ORDER DENYING MOTION TO DISMISS - 16

hyperlink to Audible's 'Conditions Of Use,' which, according to [the] [p]laintiffs, include Audible's complete offer terms." *Id.* at *8 (first alteration in original). By contrast, Heck alleges that she was enrolled in an Audible membership, without her knowledge or consent, after she used "digital rewards" she had received from Amazon by choosing the No-Rush Shipping option for her Prime purchases. Dkt. # 94 at 10 ¶¶ 45–46. She says that she never authorized Audible to enroll her in a membership and the credit card connected with her Amazon account was charged for the Audible membership. *Id.* Also, in *Viveros*, the plaintiffs alleged that they were provided with information about Audible's "Conditions of Use"; Heck alleges that before and after she was subscribed to Audible, she never received "any emails or other written communications from Amazon" informing "her of the terms of her subscription, the cancellation policy, or information about how to cancellation the subscription." *Id.* at 10 ¶ 47.

As to ARL Section 17602(a)(3), in its prior order, the Court dismissed without prejudice, Heck's UCL claim based on Defendants' alleged violation of this provision because "[s]he d[id] not offer any allegations as to whether she received emails from Amazon regarding the order, the digital reward, or the Audible subscription." Dkt. # 91 at 16. Heck now alleges that she never received "any emails or written communications from Amazon" about the terms of her subscription to Audible, the cancellation policy, or information about how to cancel the Audible subscription. Dkt. # 94 at 10 ¶ 47. Heck says that she received emails from Audible with the subject lines of "Experience all of Audible with your Premium Plus membership" and "Reminder: Don't miss out on the full Audible experience" but she ignored these emails thinking they were spam since she was unaware that she had been enrolled in Audible. *Id.* at 10–11 ¶¶ 46, 48–50. Heck alleges she received no other emails or written communications from Amazon or Audible asking for her consent to the automatic renewal terms or assent to being charged for the Audible membership. *Id.* at 11 ¶ 50; *see also Daly v. Amazon.com, Inc.*, 718 F.

ORDER DENYING MOTION TO DISMISS - 17

Supp. 3d 1378, 1389 (W.D. Wash. 2024) (reasoning, on a Rule 12(b)(6) motion, that Amazon's acknowledgment emails for enrollment in Amazon Subscriptions, which contained hyperlinks with the instructions "'[r]eview your subscription by visiting <u>Amazon [subscription] settings</u>' or '[t]o learn more or make changes, <u>manage your Prime membership</u>'" do not meet California's ARL requirements).  *Id.* at 1389 (alterations in original) (emphasis in original).  Thus, Heck sufficiently pleads facts to state claims under Sections 17602(a)(1), 17602(a)(2), and 17602(a)(3) of the ARL.

  2.  Causation & Injury

Defendants assert that Heck fails to satisfy the causation and injury requirements of the UCL because the TAC does not state with specificity the conduct that caused her injury.  Dkt. # 95 at 20.  They say that Heck does not "identify any specific conduct by either Amazon or Audible that caused her to do whatever it is she did to enroll in Audible."  *Id.*  Heck responds that the TAC, like the SAC, "allege[s] an economic injury resulting from Defendants' improper business practices."  Dkt. # 97 at 13–14.

The TAC alleges that Heck would not have selected the "FREE No-Rush Shipping" option or used the purported "digital rewards" Amazon provided for choosing No-Rush Shipping if she had been informed that she would be enrolled in an Audible membership.  Dkt. # 94 at 11 ¶ 51.  It also states that, because Defendants failed to disclose that Heck would be enrolled in an Audible subscription by redeeming the "digital rewards," she "did not take actions to cancel the unknown, unwanted, and unauthorized membership to Audible's subscription services."  *Id.* at 13 ¶ 58; *see also* Dkt # 91 at 16–17 (determining that the SAC plausibly alleged causation under the UCL by stating that Heck would not have selected the No-Rush Shipping option or would have cancelled the Audible subscription if Defendants had disclosed to her that the "digital

reward" included an Audible membership). Thus, the TAC plausibly establishes the causation and injury requirements of the UCL.[5]

## IV
### CONCLUSION

For these reasons, the Court DENIES the motion to dismiss.

Dated this 8th day of January, 2025.

*John H. Chun*
John H. Chun
United States District Judge

---

[5] Defendants also state that Heck references in passing the "fraudulent" and "unfair" prongs of the UCL. Dkt. # 95 at 19. They argue that Heck's claims under these prongs "fail for the same reasons" as Heck's CLRA claims. *Id*. Because the Court concludes that the TAC plausibly states a claim under the CLRA, it will not dismiss the UCL claim on this basis.