UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JULIA HECK, on behalf of herself and all others similarly situated,

Plaintiff,

v.

AMAZON.COM, INC.; AUDIBLE, INC.,

Defendants.

CASE NO. 2:23-cv-01219-JHC

ORDER

**I**

**INTRODUCTION**

This matter comes before the Court on Grace Sherk's Non-Party Motion to Intervene and to Gain Access to Sealed Documents.  Dkt. # 193; *see Sherk v. Audible, Inc*., Case No. 2:25-cv-01137-JHC.  The Court has considered the materials filed in support of and in opposition to the motion, pertinent portions of the record, and the applicable law.

Sherk brings this motion under Federal Rule of Civil Procedure 24 for permissive intervention and requests access to sealed documents filed in support of a dispositive motion under *Foltz v. State Farm Mut. Auto. Ins. Co*., 331 F.3d 1122, 1131 (9th Cir. 2003).  For the reasons below, the Court GRANTS the motion in part and DENIES it in part.

ORDER - 1

## II

### DISCUSSION

A.      Rule 24

Rule 24 states that "the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  Sherk has no claim or defense that shares a common question of law or fact because Sherk does not have an operative complaint.  *See Sherk v. Audible, Inc.*, __ F. Supp. 3d __, No. 25-CV-01137-JHC, 2026 WL 734289 (W.D. Wash. Mar. 16, 2026) (dismissing Sherk's complaint for failure to state a claim).  For this reason, Sherk has failed to satisfy Rule 24.  *See Foltz,* 331 F.3d at 1131-32 (considering allowing access to discovery for "parties engaged in collateral litigation"); *see, e.g.*, *Roman v. Mayorkas*, No. ED CV 20-00768 TJH (PVC), 2021 WL 6103180, at *2 (C.D. Cal. Oct. 15, 2021) (finding that a proposed intervenor "failed to establish his right to intervene" to access sealed documents where "he is merely engaged in a pre-litigation investigation").

B.      Unsealing

Sherk raises a separate argument that she should be allowed access to eight currently sealed exhibits filed in support of Heck's Response to Defendants' Motion for Summary Judgment.  Dkt. # 193 at 7-8 (requesting Dkt. ## 171-8, 171-9, 171-10, 171-11, 171-12, 171-13, 171-14, and 171-15); *see also* Dkt. # 196 at 4-5.  Sherk distinguishes between *Foltz*'s holding related to the "right of access to unfiled discovery materials" and the "right of access to judicial records" filed in support of dispositive pretrial motions, which she describes as "separate and independent from the federal rules regarding discovery."  *Id.* (quoting *Foltz*, 331 F.3d at 1130, 34).  The Court agrees with Sherk that no operative complaint is necessary to assert this right.  *Foltz*, 331 F.3d at 1134 ("the Supreme Court recognized a federal common law right 'to inspect

ORDER - 2

and copy public records and documents.'  This right extends to pretrial documents filed in civil cases, including materials submitted in connection with motions for summary judgment.").  But this right "is not absolute and can be overridden given sufficiently compelling reasons for doing so."  *Id.*  The Court should "consider all relevant factors," including "the public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets."  *Foltz*, 331 F.3d at 1135 (quoting *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)).

Defendants say that they have rebutted the presumption of public access by showing compelling reasons to seal the relevant documents in connection with the original motion to seal. Dkt. # 194 at 11-12 (citing Dkt. # 178 [Defendants' Response to Plaintiff's Motion to Seal]).[1]  In the prior briefing, Defendants raised multiple reasons to seal.  Dkt. # 178 at 6-11.  To start, Defendants repeatedly purport reputational harm if the documents are unsealed, Dkt. # 178 at 7, but without more this is insufficient to overcome the presumption of disclosure, *see Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) ("The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records.").  Nor is Defendants' desire to keep certain conversations and documents internal, Dkt. # 178 at 8, without more, a compelling reason to seal.  With that, the Court below considers each document Sherk seeks to unseal.

*Exhibit 8* is an internal draft report that analyzes customer engagement with subscription services.  Dkt. # 179 at 3; *see also* Dkt. ## 171-8, 173-5.  Defendants says that the report "is non-

---

[1] Pursuant to a stipulated protective order, the motion to seal was originally brought by Heck, who took no position on Defendants confidential designation of the materials.  *See* Dkt. # 169.

ORDER - 3

public and reflects sensitive information about Audible's customer base, the rate at which those customers engage with Audible's service" and that this information could be used by competitors to promote their products as having a higher customer engagement than Audible. Dkt. # 175 at 2-3. The Court agrees that this is a compelling reason to leave the documents sealed. *See, e.g.*, *In re Qualcomm Litig.*, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (finding that compelling reasons to seal contractual terms and information related to "business strategies" and "business model[s]" because it "could harm" future business relationships and competitive standing) (citing *In re Elec. Arts, Inc.*, 298 Fed. Appx. 568, 569 (9th Cir. 2008)); *Finjan, Inc. v. Proofpoint, Inc.*, 2016 WL 7911651, at *1 (N.D. Cal. Apr. 6, 2016) ("technical operation of [defendant's] products" sealable under "compelling reasons" standard); *Exeltis USA Inc. v. First Databank, Inc.*, 2020 WL 2838812, at *1 (N.D. Cal. June 1, 2020) (noting that courts have found "confidential business information" in the form of "business strategies" sealable under the compelling reasons standard); *Brown v. Brown*, 2013 WL 12400041, at *1 (N.D. Cal. Dec. 30, 2013) (finding that compelling reasons to seal information about "profits, losses, income, investments, and expenses" when disclosure could harm party's competitive standing).

*Exhibit 9* is a string of internal instant messages between Amazon employees. Dkt. # 179 at 3; *see also* Dkt. ## 171-9, 173-6. Defendants say this information could cause unfair reputational and commercial harm and unnecessary embarrassment of the employees. *Id.* Defendants have not explained how these communications would cause harm other than asserting in conclusory fashion that they were confidential. *Id.* This is insufficient. And as already explained, potential embarrassment does not outweigh the public's presumed right of access. And the exhibit contains very little, if any, data competitors may use. *See generally* Dkt. # 173-6. Exhibit 9, Dkt. # 171-9, should be unsealed.

ORDER - 4

*Exhibit 10* is a PowerPoint discussing subscription service enrollment processes and customer service data.  Dkt. # 179 at 4; *see also* Dkt. ## 171-10, 173-7.  Defendants say public disclosure could cause unfair reputation and commercial harm by "providing other commercial actors with insight into confidential internal discussions and data that they would not otherwise have access to."  Dkt. # 179 at 4.  The slides primarily consist of annotated screenshots of the then current user experience and then a mockup of a new user experience.  Dkt. # 173-7.  There is no data at risk of exposure and Defendants have not linked how disclosure of these annotations could provide competitors an advantage; and thus there is not a compelling reason to seal that overcomes the presumption.  Exhibit 10, Dkt. # 171-10, should be unsealed.

*Exhibit 11* is a PowerPoint discussing customer service interactions.  *See* Dkt. # 180 at 3; *see also* Dkt. ## 171-11, 173-8.  Defendants incorporate earlier briefing that says, "Competitors might also utilize the acquisition- and quantity-related metrics in Exhibit [11] to discern confidential information about Audible's customer base."  Dkt. # 157 at 3.  The PowerPoint contains data showing contacts, subscription rates, cancellation rates, and more.  Dkt. # 173-8.  The Court agrees with Defendants that there is a compelling reason to keep this document sealed.

*Exhibit 12 and 13* are PowerPoint slides describing potential customer interactions and ideal customer service representative responses..  *See* Dkt. # 180 at 3; *see also* Dkt. ## 171-12, 171-13, 173-9, 173-10.  To show a compelling reason, Defendants point to briefing from earlier in the litigation; however, that briefing does not discuss the materials contained in Exhibits 12 or 13, and thus Defendants have not provided a compelling reason for keeping these documents sealed.  *See* Dkt. # 194 (citing Dkt. # 178, which in turn is supported by Dkt. # 180, which in turn incorporates Dkt. # 157).  The Court does not see how any concerns regarding standard customer service trainings overcome the presumption of public disclosure, and thus, Exhibits 12 and 13, Dkt. ## 171-12, 171-13, should be unsealed.

ORDER - 5

*Exhibit 14* is an internal memo discussing ways to use data to gain customer insight.  *See* Dkt. # 180 at 3; *see also* Dkt. # 171-14, Dkt. # 173-11.  This document discusses specific platforms and strategies used to interact with customers, research approaches, and changes Defendants planned to make to improve customer satisfaction.  *See* Dkt. # 173-11.  Defendants say public disclosure of this information could cause Audible unfair commercial harm, including by providing other commercial actors with insight into confidential Audible policies, practices, data, and analyses—the Court agrees.  Dkt. # 180 at 3.

*Exhibit 15* is a spreadsheet, made for litigation, showing the number of Audible members with California billing addresses who never used the membership, and the total amount charged to those customers between 2018 and 2025.  Dkt. # 180 at 3-4; Dkt. # 171-15, 173-12.  Defendants say because this is a sizeable subset of Audible's members and includes the fees charged, it could be used by competitors to determine Audible's customer base, monthly revenues for membership services, member engagement, and Audible's conversion of customers into monthly members.  Dkt. # 180 at 3-5.  They say this could be cross-referenced with Audible's various public promotions and content to gain an unfair advantage.  *Id.*  The disclosure could also, Defendants say, result in adversely affecting Audible's contractual negotiations.  *Id.*  The Court agrees that this is a compelling reason to keep the exhibit sealed.

***

Being fully advised, for the reasons above, the Court DENIES the motion to intervene and GRANTS the request to unseal as to Dkt. ## 171-9, 171-10, 171-12, 171-13.  The Court DIRECTS the Clerk of the Court to unseal Dkt. ## 171-9, 171-10, 171-12, 171-13.

//

//

ORDER - 6

Dated this 12th day of May, 2026.

John H. Chun
United States District Judge

ORDER - 7