UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JULIA HECK, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC.; AUDIBLE, INC.,<br><br>Defendants. | CASE NO. 2:23-cv-01219-JHC<br><br>ORDER |

## I

### INTRODUCTION

This matter comes before the Court on Defendants Amazon.com, Inc. and Audible, Inc.'s Motion for Summary Judgment. Dkt. # 159. The Court has considered the materials filed in support of and in opposition to the motion, the rest of the file, and the governing law. The Court has also considered the thoughtful arguments of counsel at the hearing on July 8, 2026. Dkt. # 199. Being fully advised, for the reasons below, the Court GRANTS the Motion and DISMISSES this action with prejudice.

ORDER - 1

## II

### BACKGROUND

A.    Audible and Amazon

The following facts are undisputed.  Audible, a wholly-owned subsidiary of Amazon,[1] operates an eponymous platform that provides access to digital audiobooks and other spoken audio content.  Dkt. # 165 (Decl. of Ryan Eland[2]), ¶ 4.  Audible "offers monthly memberships that provide a suite of benefits, including the monthly issuance of one or two Audible credits (depending on the membership tier) that Audible members can redeem for any title in Audible's premium catalogue."  *Id.* ¶ 5.

Amazon offers Prime members a 30-day trial of Audible that includes two free Audible credits.  *Id.* ¶ 6.  On an example of a webpage relating the terms of the offer, which comes in a "Plus" tier and a "Premium Plus" tier, Audible discloses that each "[a]uto-renews . . . after 30 days" at either $7.95 or $14.95 per month.  Dkt. # 165-1 (screenshot of Audible webpage) at 2.  Audible also states that a user can "[s]witch plans or cancel anytime."  *Id.*  When browsing Amazon's platform, customers may be presented with an offer for Audible membership when browsing individual book titles, whereby the customer can receive an audiobook title for "$0.00 with membership trial."  *See* Dkt. # 165-2 at 2–3 (offer presented when browsing the Amazon website on a computer); Dkt. # 165-3 at 2–3 (same; mobile website).  On both the computer and mobile webpages, the offer further states that "[b]y clicking 'Try for free,' you agree to Audible's Conditions of Use and permit Audible to charge your default card or another card on file.  Membership continues until cancelled for $14.95/month + taxes.  Cancel anytime on your

---

[1] This Order refers to each Defendant by name or collectively as "Defendants."
[2] Mr. Eland's title is Senior Director of Global Customer Engagement at Audible, Inc., and previously he served as Audible's Head of Customer Experience.

ORDER - 2

Audible account page." Dkt. # 165-2 at 3 (computer browser offer); Dkt. # 165-3 at 4 (mobile browser offer).

When browsing audiobook titles on Audible's platform, customers are sometimes presented with an offer to try the title in question "for $0.00," with the added disclaimer that "[b]y clicking 'Try for free,' you agree to our Conditions of Use and Amazon's Privacy Notice and permit Audible to charge your default card or another card on file.  Membership continues until cancelled for $14.95/month + taxes.  Cancel anytime via Account Details."  *See* Dkt. # 165-4 at 2–3 (offer via Audible's webpage on a computer browser; underlined in original); Dkt. # 165-5 at 2–3 (offer via Audible's webpage on a mobile browser).  These buttons (to be "clicked"), whether viewed on a computer or mobile browser, are sometimes referred to as "call-to-action" (CTA) buttons.

Separately from Audible's trial offers, Amazon rewards customers who opt for delayed shipping (what Amazon calls "No-Rush Shipping") when they purchase products from Amazon's website.  *See* Dkt. # 166 (Declaration of Conner Mickelson[3]) ¶ 4.  The rewards vary, though "they generally take the form of a $1 through $4 digital rewards applicable to select eBooks (not Audible audiobooks), digital music, videos, and apps."  *Id.* ¶ 5.  Amazon underscores that it "is not possible," nor has it ever been possible, to redeem the digital rewards given for selecting No-Rush Shipping for Audible titles.  *Id.* ¶¶ 6–9.

B.      Plaintiff's Audible and Amazon Transactions

On February 28, 2021, Plaintiff was shopping for books on her mobile device while logged into her Amazon Prime account.  Dkt. # 165 ¶ 21.  She selected the Audible audiobook *Bar Exam Mind: A Strategy Guide For An Anxiety-Free Bar Exam* by Matt Racine.  *Id.* ¶ 24.

---

[3] Mr. Mickelson's title is Senior Product Manager at Amazon, and he oversees aspects of the Prime program.

ORDER - 3

She "was given the choice between paying the list price for that title or obtaining the audiobook for free by starting an Audible Premium Plus trial." *Id.* She ultimately tapped the "Try for $0.00" button. *Id.* ¶ 25. Plaintiff does not dispute the above. *See* Dkt. # 170 at 11 (citing Dkt. # 165 ¶ 24). Plaintiff says that she believed that she had redeemed, for the Audible title, the digital rewards she had earned from selecting No-Rush Shipping on other purchases made on the Amazon website. *See* Dkt. # 171-1 at 7 (response to Defendants' third interrogatory), *id.* at 9 (response to Defendants' seventh interrogatory, referring to her response to the third interrogatory). Plaintiff says she received such digital rewards from Amazon at least as early as 2022. *See* Dkt. # 171-2 (email from Amazon received on July 30, 2022 giving her a "$1 digital reward because" she "selected Amazon Day delivery on [her] recent Prime order.").[4]

C.      Plaintiff's Claims and Procedural History

Plaintiff sued Defendants in 2022, initially in California state court.[5] In her Third Amended Complaint (TAC), now before this Court, Plaintiff contends that when she used digital rewards accrued from No-Rush Shipping to obtain the Audible title, Amazon provided Audible with her information, and Audible enrolled her in a "free trial membership without her knowledge or permission." Dkt. # 94 ¶¶ 40, 42. Plaintiff says that Defendants had access to her credit card information because it was saved on her Prime account. *Id.* ¶ 41. Based on that theory, Plaintiff contends, on behalf of herself and a class of similarly situated individuals, that Defendants violated (1) California's Consumers Legal Remedies Act (CLRA), California Civil

---

[4] As detailed below, Plaintiff's purported selection of "Amazon Day Delivery" on other Amazon purchases differs from her allegation in the Third Amended Complaint (TAC) that she received the digital rewards by selecting "No-Rush Shipping." *See, e.g.*, Dkt. # 94 ¶¶ 55–56 (describing Amazon's offer of "FREE NO-Rush Shipping" in exchange for "a 'reward for select digital purchases'"). The TAC makes no references to Amazon Day shipping.

[5] Plaintiff filed her original complaint on May 16, 2022, in Humboldt County, California. *See generally* Dkt. # 1-2. The case was then removed to the Northern District of California. *See* Dkt. # 1. In August 2023, the case was transferred to this District. *See* Dkt. ## 64–65.

ORDER - 4

Code § 1750, *et seq.*; and (2) California's Unfair Competition Law (UCL), California Business and Professions Code § 17200, *et seq.* *See generally id.*

On April 1, 2024, Defendants moved to dismiss the TAC, arguing that Plaintiff had failed to state a claim. *See generally* Dkt. # 95. On January 8, 2025, this Court denied the motion to dismiss. *See generally* Dkt. # 100. With respect to Plaintiff's CLRA claim, the Court determined that TAC "plausibly alleges that Defendants had an obligation to disclose" that it would pass her information to Audible and enroll her in a free trial, and "their failure to disclose was an omission under the CLRA." *Id.* at 12. The Court also found that Plaintiff had met Rule 9(b)'s heightened pleading requirements and properly pleaded reliance and causation for her CLRA claim. *Id.* at 12–13. With respect to the UCL claim, the Court determined that Plaintiff had properly pleaded the predicate violations of the CLRA and California's Auto-Renewal Law (ARL) by plausibly alleging that Audible enrolled her without her consent, in addition to plausibly alleging causation and injury. *Id.* at 17–19. The case proceeded to discovery.

Defendants now move for summary judgment on Plaintiff's CLRA and UCL claims. *See generally* Dkt. # 159. They contend principally that Plaintiff's CLRA fails because there is no dispute regarding the fact that it is impossible to redeem the digital rewards given for selecting No-Rush Shipping for Audible titles, which means that Defendants could not have disclosed any link between the two and thus cannot be liable for any misrepresentation under the CLRA. *See* Dkt. # 159 at 7. And Defendants contend that Plaintiff's UCL claim fails because Plaintiff cannot show the predicate violations of the CLRA and ARL. *Id.* at 21–22.

ORDER - 5

### III

#### DISCUSSION

A.      Summary Judgment Standards

Summary judgment is appropriate if the evidence viewed in the light most favorable to the nonmoving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The party moving for summary judgment bears the initial burden of showing that there is no genuine dispute as to any material fact and that they may prevail as a matter of law on all claims for which they seek summary judgment. *See Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a factual dispute is "genuine" if "there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *id.*).

If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a factfinder could reasonably find in its favor. *See Celotex*, 477 U.S.at 324; *see also Anderson*, 477 U.S. at 250. Although a court must draw all "justifiable inferences" in favor of the nonmoving party, "[t]he mere existence of a scintilla of evidence . . . will be insufficient[,]" and missing facts will not be presumed. *Anderson*, 477 U.S. at 252, 255; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). If the nonmoving party does not meet its burden, the court must grant summary judgment to the movant. *See* Fed. R. Civ. P. 56(a).

ORDER - 6

B.      Analysis

        1.      CLRA claim

The CLRA declares unlawful certain acts and practices in the sale of goods or services. Cal. Civ. Code § 1770.  Plaintiff claims that Defendants violated Sections 1770(a)(5), (a)(14), and (a)(16) of the CLRA, each of which prohibit various types of misrepresentations.  *See* Dkt. # 94 ¶ 80.  Section 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have."  Cal. Civ. Code § 1770(a)(5).  Section 1770(a)(14) prohibits "[r]epresenting that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law."  *Id.* § 1770(a)(14).  And Section 1770(a)(16) prohibits "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not."  *Id.* § 1770(a)(20).  A "plaintiff suing under the CLRA for misrepresentations in connection with a sale" must "plead and prove she relied on a material misrepresentation."  *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 946 (S.D. Cal. 2007) (citing *Caro v. Procter & Gamble Co.*, 18 Cal. App.4th 644, 668 (1993).

Defendants argue that Plaintiff's claim fails because she does not identify a misrepresentation or omission.  *See* Dkt. # 159 at 18–19.  They assert that there is no technical capacity for an Amazon customer to redeem digital rewards given for selecting No-Rush Shipping for Audible titles—and that, in any event, there is no evidence that Plaintiff ever used No-Rush Shipping at all.  *Id.*  They contend that because there is no link between No-Rush Shipping and Audible enrollment, Defendants could not have misrepresented or omitted any information in contravention of the CLRA.  Defendants also argue that, for the same reason, Plaintiff cannot show standing, *id.* at 21, or reliance, causation, or damages, *id.* at 19–21.

ORDER - 7

Plaintiff responds that Defendants ignore the reasonable consumer standard,[6] and that she has met this standard by presenting evidence that large numbers of consumers were enrolled in Audible apparently without their own knowledge. *See* Dkt. # 170 at 18–21. Plaintiff also argues that Defendants misled her when she clicked the Audible title's "Try for $0.00" CTA button, and that this button "and the Audible enrollment process in general are deceptive to the reasonable consumer." *Id.* at 22. She also argues that she can show standing, reliance, causation, and damages for her CLRA claim. *Id*.

When the Court denied Defendants' motion to dismiss, it reasoned that Plaintiff had properly pleaded that Defendants "had an obligation to disclose that Prime members would be subscribed to a 30-day free Audible membership" via the "benefit[] of selecting the No-Rush Shipping option," a process that was only "partial[ly]" disclosed. Dkt. # 100 at 11 (internal quotation marks and citation omitted). In other words, the Court accepted the theory of liability Plaintiff pleaded in the TAC: That through use of digital rewards accrued by Plaintiff's selection of No-Rush Shipping, Defendants misleadingly or deceptively enrolled her into an Audible subscription without her knowledge. *See* Dkt. # 94 ¶¶ 40, 54. In terms of causation and reliance, the Court accepted that the TAC alleges that, "had Defendants informed [Plaintiff] 'in a clear and conspicuous manner' that she would be enrolled in an Audible membership after using the purported 'digital rewards' she had received by choosing No-Rush Shipping for her Prime purchases, she would have either '1) not selected the 'FREE No-Rush Shipping' option or used what she thought were the "digital rewards"; and/or 2) taken steps to cancel the Audible

---

[6] "[T]he reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 777–78 (9th Cir. 2024) (citing *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)).

ORDER - 8

membership before she was charged for it.'" Dkt. # 100 at 13 (citing Dkt. # 94 ¶ [58]).  This tracks Plaintiff's central theory of liability, as pleaded in the TAC.

But unrebutted evidence, even construed in Plaintiff's favor, dooms Plaintiff's CLRA claim.  To begin, the evidence shows that there is no capacity to redeem Audible titles or begin an Audible subscription using the digital rewards resulting from No-Rush Shipping.  *See* Dkt. # 166 ¶¶ 5–9.  Because digital rewards cannot be used to redeem Audible titles or begin an Audible subscription, Defendants could not have omitted or misrepresented any information about using those digital rewards to acquire Audible titles.  In the language of the pertinent allegation from the TAC, Defendants could not have "disclose[d] to Plaintiff" that she "would be enrolled in Audible's subscription services by using what she thought were 'digital rewards' by agreeing to 'FREE No-Rush Shipping' through [her] Amazon Prime membership," because digital rewards cannot be used to do so.  Dkt. # 94 ¶ 58.  Plaintiff also complains that Defendants failed to disclose to her that customers cannot use digital rewards to redeem Audible titles, which is not the theory she pleaded in the TAC and does not strike the Court as a misrepresentation that would violate the CLRA.

Second, there is no evidence that Plaintiff ever used No-Rush Shipping, another plank of her theory.  Plaintiff testified at her deposition that she was not familiar with No-Rush Shipping and could not recall ever having used it.  *See* Dkt. # 160-1 (Plaintiff's deposition) at 68:11–23; 69:3–15; 80:5–8.  According to Defendants' records, Plaintiff never selected that option when placing her Amazon orders.  Dkt. # 166 ¶ 10.[7]  Without evidence of having used No-Rush

---

[7] The TAC includes an exhibit showing the "FREE No-Rush Shipping" option selected on what looks like the checkout page for a purchase on Amazon's website.  *See* Dkt. # 94-3 at 3.  But Plaintiff does not allege in her TAC that she selected this "FREE No-Rush Shipping" option.  The exhibit appears to present shipping speeds offered by Amazon, including two dates for "FREE Prime Delivery" and one for "FREE Amazon Day Delivery."  *Id.*  The exhibit is offered to support the TAC's allegation that Amazon offers "FREE No-Rush Shipping" for certain purchases.  *See* Dkt. # 94 ¶ 37.

ORDER - 9

Shipping, Plaintiff cannot show that she relied on it as part of Defendants' misrepresentation, as she pleaded in the TAC. *Cf. In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1018 (N.D. Cal. 2013) (granting summary judgment against CLRA claim partly because the plaintiffs did not present evidence that they had seen, read, or relied on the alleged misrepresentation).

Plaintiff spends most of her argument appealing to the reasonable consumer standard, but this maneuver fails for two reasons. First, the reasonable consumer standard does not relieve Plaintiff from bringing forward evidence about a misrepresentation that she relied on, in accordance with what she pleaded in the TAC. But Plaintiff has presented no evidence that would raise a dispute of material fact related to the misrepresentation she identified in the TAC: the connection between the digital rewards derived from No-Rush Shipping and her enrollment in Audible. Put differently, the reasonable consumer standard governs how a court evaluates the alleged misrepresentation; but here, there is no misrepresentation that could mislead a reasonable consumer.

Second, Plaintiff's reference to the reasonable consumer standard appears to amount to an attempt to alter the theory of liability she pleaded in the TAC. Plaintiff's briefing says, she "saw and relied upon the 'Try for $0.00' CTA button," that button "and the Audible enrollment process in general are deceptive to the reasonable consumer, and Defendants' deceptive conduct caused Plaintiff monetary injury when she was charged $59.80 (i.e., injury-in-fact) for an Audible service that she did not know about, did not want, and did not use." Dkt. # 170 at 22. But this is not the theory that she pleaded in the TAC. Plaintiff does not bring up the CTA button at all in the TAC. Nor does she even allege in the TAC that the Audible enrollment process is confusing, or that she confused some Amazon benefits for Audible benefits. Further, at her deposition, Plaintiff testified that she could not recall having used the CTA button. *See* Dkt. # 160-1 at 97:1–5. Plaintiff later attempted to revise her testimony and submitted a

ORDER - 10

supplemental interrogatory response in which she claims she "refreshed her recollection" that she "believed that she was redeeming such 'credits' or 'digital rewards' when she selected books on the Amazon website for '$0.00.'"  *See* Dkt. # 171-1 at 7.  Defendants say that the supplemental interrogatory response amounts to an attempt to "create an issue of fact by an affidavit contradicting [her] prior deposition testimony," though the maneuver occurred via interrogatory response instead of an affidavit.  *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012)[8]; *Jack v. Trans World Airlines, Inc.*, 854 F. Supp. 654, 661 (N.D. Cal. 1994) (applying the "sham affidavit" rule to amended interrogatory responses: "This unexplained contradictory testimony cannot create a triable issue of fact and defeat summary judgment.").  Setting aside Plaintiff's apparent attempt to gin up a factual dispute, it still amounts to an effort to change the theory of liability to survive summary judgment.  *See Comprehensive Med. Ctr., Inc. v. State Farm Mut. Auto. Ins.*, 690 F. Supp. 3d 1104, 1114 (C.D. Cal. 2023), *aff'd sub nom. Comprehensive Med. Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 2025 WL 416814 (9th Cir. Feb. 6, 2025) ("A plaintiff cannot allege one theory of liability in a complaint and then 'turn around and surprise [a defendant] at the summary judgment stage' with a different theory of liability." (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292–93 (9th Cir. 2000)).  At bottom, Plaintiff's recharacterization of her own claim as contending that "the 'Try for $0.00' CTA button and the Audible enrollment process in general are deceptive to the reasonable consumer" amounts to a new theory of liability that was not pleaded in the TAC.  Dkt. # 170 at 22.

---

[8] "In order to trigger the sham affidavit rule, the district court must make a factual determination that the contradiction is a sham, and the 'inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit.'" *Yeager*, 693 F.3d at 1080 (citing *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 989–99 (9th Cir. 2009)).  As mentioned, in the deposition, Plaintiff testified that she could not recall ever having used or seen the CTA button advertising that she acquire the Audible title via the "Try for $0.00" button. *See* Dkt. # 160-1 at 97:1–5.  This is clearly inconsistent with the supplemental interrogatory response, which states that she "refreshed her recollection[] including with documents produced by Defendants subsequent to Plaintiff's initial response." Dkt. # 171-1 at 7.

ORDER - 11

Also, Plaintiff's citation to the purportedly large numbers of Audible users enrolled without their knowledge is a red herring. *See* Dkt. # 170 at 20–21. These statistics are not a substitute for coming forward with evidence about a misrepresentation made to Plaintiff, Plaintiff's reliance on that misrepresentation, a causal relationship between the two, and Plaintiff's damages. Whether or not it is true that many Audible users are enrolled without their consent at best provides circumstantial support for Plaintiff's claims.

For all these reasons, Plaintiff does not show the required elements of either standing[9] or reliance, causation, and damages[10] in her CLRA claim. Plaintiff has no evidence concerning a specific misrepresentation or omission on the part of Audible or Amazon. With no such evidence, Plaintiff cannot establish that whatever economic damage she may have suffered occurred because of the challenge practice, the essential elements of standing. By the same token, she cannot show that she relied on a misrepresentation and that whatever economic injury she may have suffered was caused by that misrepresentation, each necessary for her claim.

In summary, there is no genuine dispute that the digital rewards resulting from No-Rush Shipping cannot cause Audible enrollment, nor is there any genuine dispute that Plaintiff did not actually use No-Rush Shipping. Thus, summary judgment is appropriate against Plaintiff on her CLRA claim.

---

[9] "To have standing under the CLRA, a plaintiff must allege that she relied on the defendant's alleged misrepresentations and that she suffered economic injury as a result." *In re iPhone*, 6 F. Supp. 3d at 1012 (granting summary judgment against CLRA claimant); *see also Aron v. U-Haul Co. of California*, 143 Cal. App. 4th 796, 802 (2006) ("To have standing to assert a claim under the CLRA, a plaintiff must have "suffer[ed] any damage as a result of the . . . practice declared to be unlawful.").

[10] "To prevail on their causes of action under the . . . CLRA, [a plaintiff] must demonstrate that they actually relied on the challenged misrepresentations and suffered economic injury as a result of that reliance." *Wilson v. Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1208 (N.D. Cal. 2017) (citing *In re iPhone*, 6 F. Supp. 3d at 1012–14).

ORDER - 12

2.    UCL claim

The UCL prohibits business practices that are "unlawful, unfair or fraudulent." Cal. Bus. & Prof. Code § 17200. Each of the three prongs "is a separate and distinct theory of liability[.]" *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). "The unlawful prong borrows violations of other laws and treats them as independently actionable under the UCL[.]" *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Pracs. & Prods. Liab. Litig.*, 890 F. Supp. 2d 1210, 1220 (C.D. Cal. 2011) (citing *Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 383, 826 P.2d 730 (1992)). The Court's order denying dismissal of the TAC concludes that Plaintiff pleaded a claim under the UCL's unlawful prong, with the CLRA and California's Auto-Renewal Law (ARL), Cal. Bus. & Prof. Code § 17602, as predicate violations. *See* Dkt. # 100 at 14–15. Because the analysis above concludes that summary judgment must be entered against Plaintiff's CLRA claim, this section of the Order analyzes only the sufficiency of the evidence with respect to Plaintiff's ARL claim.

Plaintiff characterizes her claims as contending that Defendants violated the ARL in their transactions with her "by (1) failing to present the automatic renewal terms in a 'clear and conspicuous' manner before consumers enrolled in the Audible subscription, (2) failing to obtain the consumer's 'affirmative' consent before charging for the automatic renewal, and (3) failing to provide a proper post enrollment acknowledgment." Dkt. # 170 at 26 (citing Cal. Bus. & Prof. Code § 17602(a)(1)–(3)[11]); *see also* Dkt. # 94 ¶¶ 91–93 (corresponding TAC allegations).

---

[11] Plaintiff's ALR claims are based on: (1) the requirement to "present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled"; (2) the requirement to not "[c]harge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent"; and (3) the requirement to "provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer." Cal. Bus. & Prof. Code § 17602(a)(1)–(3).

ORDER - 13

Defendants contend that there are no genuine factual disputes on the key ARL issues. First, they point to evidence concerning the presentation of the Audible offer: they say it visually offsets the renewal terms from the "Try for $0.00" CTA button and complies with the statute. Dkt. # 159 at 23–24 (citing Dkt. # 165 ¶ 26; Dkt. # 165-7 at *2). Second, they say that Audible obtained Plaintiff's affirmative consent for the automatic renewal enrollment when she clicked on the CTA button, indicating that she agreed to the hyperlinked conditions of use. *Id.* at 24 (citing Dkt. # 165 ¶¶ 26–27). Plaintiff does not dispute this fact. Third, they point to an email sent by Audible and received by Plaintiff acknowledging the transaction's terms. *Id.* at 24–25 (citing Dkt. # 165 ¶¶ 28–30; Dkt. # 165-9 at *5). Defendants also argue that Plaintiff cannot establish either standing, *id.* at 27, or reliance, causation, or damages. *Id.* at 26.

In response, Plaintiff suggests that the presentation and visual aspect of the disclaimer are improper. Dkt. # 170 at 27. She also argues primarily in reply that Defendants' failure to prompt her to enter her billing information (it used what she had saved on the Amazon website) in addition to Amazon's failure to send an acknowledgment email (such email came only from Audible) creates fact issues on her ARL claim sufficient to survive summary judgment. Dkt. # 170 at 26–28 (citing Dkt. # 173 ¶ 38; Dkt. # 173-3 at 8–9, 14). She maintains that the reasonable consumer standard applies and that the "'full context of the transaction' is necessary to evaluate the disclosures." Dkt. # 170 at 26 (citing *FTC v. Amazon.com*, 2025 WL 2677086, at *7 (W.D. Wash. Sept. 17, 2025). And she says she can show standing and reliance, causation, and damages. *Id.* at 28–29.

a.    Presentation of subscription renewal terms

Under the ARL, a business must present the following automatic renewal terms to a consumer before enrollment, "in visual proximity . . . to the request for consent to the offer": "(1) That the subscription or purchasing agreement will continue until the consumer cancels"; "(2)

ORDER - 14

The description of the cancellation policy that applies to the offer"; "(3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known"; "(4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer"; and "(5) The minimum purchase obligation, if any." Cal. Bus. & Prof. Code §§ 17601(a)(2) & 17602(a)(1). These terms must be presented "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." *Id.* § 17601(a)(3).

Uncontroverted evidence establishes that the substance, placement, and visual aspect of the disclaimer complies with the ARL. The button to start the trial sits below the disclaimer. *See* Dkt. # 165 ¶¶ 24–27. The disclaimer discloses that "[b]y starting your free trial, you agree to our Conditions Of Use and Amazon's Privacy Notice and permit Audible to charge your default card or another card on file." *Id.* ¶ 26; Dkt. # 165-7 at 2. The autorenewal terms are also present. *Id.* (text disclosing that "Membership continues until cancelled for $14.95/mo. + taxes. Cancel anytime via Account Details."). This language was underlined, setting it off from the surrounding plain text. *Id.* The *Viveros* court found that the substance and the visual presentation of nearly identical terms complied with the ARL, and this Court sees no reason to disagree based on the evidence before it. *See Viveros v. Audible, Inc.*, 2023 WL 6960281, at *7 (W.D. Wash. Oct. 20, 2023).

Plaintiff's only argument concerns the substance of the disclaimer. She marshals evidence from a presentation, presumably by an employee of a Defendant, which states that the CTA buttons are misleading. *See, e.g.*, Dkt. # 173-7 at 14–15 (filed under seal). But the image

of the CTA button in that presentation differs from the CTA button that Plaintiff would have used. It lacks the "Try for $0.00" language, which omission the presentation's author apparently suggested was problematic. *Id.* (filed under seal). Thus, the presentation does not raise a fact issue. In any event, to the extent it reveals that, at one point, Defendants believed their Audible subscription sign-up process could be misleading, it may suggest the opposite as to Plaintiff, since Defendants revised the Audible button to the version that Plaintiff used.

The Court concludes that there is no genuine dispute of fact regarding the substance and visual aspect of the Audible subscription button and its associated disclosures, and that Defendant did not violate the ARL in presenting the terms of the subscription.

           b.         Plaintiff's affirmative consent and post-enrollment acknowledgment

Uncontroverted evidence also demonstrates Plaintiff's affirmative consent to the Audible subscription. Plaintiff does not dispute Defendants' account that she clicked the button to begin the Audible subscription, and by doing so agreed to the Audible subscription's terms and conditions, which she could have read by clicking on the link provided to her. Dkt. # 165 ¶¶ 26–27; *see also* Dkt. # 165-7 at 3 (on representative checkout page, text stating that "[b]y starting your free trial, you agree to our Conditions of Use and Amazon's Privacy Notice and permit Audible to charge your default card or another card on file."). Again, these are nearly the same facts that the *Viveros* court found persuasive. *See* 2023 WL 6960281, at *7–8. At oral argument, Plaintiff's counsel agreed that *Viveros* was correctly decided, at least on the facts of that case. Dkt. # 199.

Plaintiff's sole argument is that Defendants violated this portion of the ARL because they did not ask her to affirmatively input her billing information, and thus *Viveros* is distinguishable. *See* Dkt. # 170 at 27–28. This argument fails to persuade the Court. First, there is no apparent legal basis for Plaintiff's point that affirmative consent can only be demonstrated by affirmative

ORDER - 16

input of billing information, as opposed to authorizing the merchant to charge saved payment information that the customer has used.  Plaintiff cites this Court's decision on Prime enrollment, *id.* at 28 (citing *FTC v. Amazon*, 735 F. Supp. 3d 1297, 1320 (W.D. Wash 2024)), but that case is distinguishable.  Primarily, in the FTC case, this Court noted that the challenged Amazon Prime enrollment process (called the UPDP) "is separate from the billing page and consumers are not prompted to enter or confirm their billing information before they are subscribed to Prime." *Id.* Here, the Audible subscription enrollment page shows the customer's billing information and includes an option to change it.  *See* Dkt. # 165-7 at 3.  Whatever flaws may have existed with Prime's enrollment process, Audible's is sufficiently distinct to preclude comparison between the two cases on this point.

Finally, Plaintiff's only argument regarding post-enrollment acknowledgment is that Amazon should have sent a confirmation email in addition to the one sent by Audible.  Dkt. # 165 ¶ 30; Dkt. # 165-9 at 5 (confirmation email that Plaintiff received).  Plaintiff does not dispute that Audible sent the confirmation email.  *See* Dkt. # 160-1 at 149:14–16.  She identifies no authority to support the proposition that Defendants violate the ARL's requirement for post-enrollment confirmation when a defendant's parent company does not send a confirmation email when the subsidiary company already has.

Thus, the Court concludes that there is no genuine dispute of fact regarding Plaintiff's affirmative consent and the sending of the post-enrollment confirmation, and that Defendant did not violate the ARL's corresponding provisions.

ORDER - 17

c.      Standing and reliance, causation, and damages

The evidence presented precludes Plaintiff from establishing either standing,[12] causation, or damages.[13]  As discussed above, the visual disclaimers on the Audible trial enrollment satisfy the ARL-required disclosures.  Additionally, Defendants sent Plaintiff an ARL-compliant acknowledgment enrollment email after she enrolled.  Both facts preclude Plaintiff from establishing that she would not have enrolled in Audible had the required disclosures been provided—since they were provided—which prevents her from establishing standing.  As to reliance, causation, and damages, the evidence demonstrates that she apparently ignored the ARL-compliant disclosures and post-enrollment email confirmation that Defendants did send her.  *See* Dkt. # 160-1 at 55, 160:3–161:4.  This ignorance precludes her from establishing at least the causation element, since she says she never saw the allegedly faulty disclosures and confirmation and thus she cannot claim that they caused her damages.  *See Turnier v. Bed Bath & Beyond*, 517 F. Supp. 3d 1132, 1140 (S.D. Cal. 2021) (finding that the plaintiff could not show causation under the ARL since the "required disclosures would [not] have altered the outcome" where the plaintiff says he did not "encounter[]" the webpage showing those disclosures).

---

[12] To "establish standing under the UCL, a plaintiff must demonstrate that she 'suffered injury in fact and [ ] lost money or property as a result of the unfair competition.'" *In re iPhone*, 6 F. Supp. 3d at 1013 (citing Cal. Bus. & Prof. Code § 17204).  In terms of the ARL, Plaintiff must show that she would not have signed up for Audible "had the disclosures been provided, or that [she] would have cancelled . . . had it been easier to do so." *Mayron v. Google LLC*, 54 Cal. App. 5th 566, 574, 269 Cal. Rptr. 3d 86, 91 (2020) (citing *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 317, 246 P.3d 877 (2011)).

[13] "To prevail on their causes of action under the UCL, . . . [a plaintiff] must demonstrate that they actually relied on the challenged misrepresentations and suffered economic injury as a result of that reliance." *Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d at 1208 (citing *In re iPhone*, 6 F. Supp. 3d at 1012–14).  Courts evaluating ARL claims have suggested that such claims require a showing of causation. *See, e.g., Turnier v. Bed Bath & Beyond Inc.*, 517 F. Supp. 3d 1132, 1140 (S.D. Cal. 2021).
Plaintiff contends that she need not show actual reliance because that "requirement does not apply to UCL actions that are not based upon a fraud theory." *Medrazo v. Honda of N. Hollywood*, 205 Cal. App. 4th 1, 12 (2012) (citing *In re Tobacco II Cases*, 46 Cal.4th 298, 325, 207 P.3d 20 (2009)) (cited at Dkt. # 170 at 29).  The Court need not determine whether ARL claims are fraud-based because it determines that Plaintiff does not show the required element of causation.

ORDER - 18

Her only argument on both standing and the reliance, causation, and damages elements is that it was reasonable for her to ignore the post-enrollment email confirmation from Audible since it resembled "unsolicited marketing" and because the Audible "enrollment flow contained dark patterns to render those disclosures ineffective." Dkt. # 170 at 29.  But she does not provide authority to support this proposition.  Further, accepting this argument would permit plaintiffs to ignore ARL-required disclosures and post-enrollment confirmation in the face of contrary evidence, as here.

3.    Rule 56(d)

At the end of her brief, Plaintiff argues that summary judgment is premature because discovery has not yet closed.  Dkt. # 170 at 29.  She suggests that Federal Rule of Civil Procedure 56(d) applies here.  The rule permits nonmovants in summary judgment relief upon a showing "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d).  Plaintiff says that the declaration submitted by her counsel presents these reasons.  *See* Dkt. 171 ¶¶ 10–28.

When considering relief under Rule 56(d), a party must "identify by affidavit 'the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment.'" *Sec. & Exch. Comm'n v. Stein*, 906 F.3d 823, 833 (9th Cir. 2018) (citing *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006)).  Those specific facts "must be 'essential' to the party's opposition to summary judgment," *id.* (citing Fed. R. Civ. P. 56(d)), and "it must be 'likely' that those facts will be discovered during further discovery." *Id.* (citing *Margolis v. Ryan*, 140 F.3d 850, 854 (9th Cir. 1998)).

Preliminarily, the Court notes that Plaintiff stipulated to a stay of discovery two months after the summary judgment motion was filed, *see* Dkt. # 184, and otherwise would have been able to seek discovery in response to issues identified by Defendants in their summary judgment

ORDER - 19

motion.  In any event, the Court concludes that Plaintiff has not made the necessary showing to justify Rule 56(d) relief.

First, Plaintiff suggests she requires further discovery into Amazon's other shipping options, such as through deposing Mr. Mickelson, one of Defendants' declarants.  *See* Dkt. # 171 ¶¶ 13–16.  Plaintiff argues that such a deposition is necessary to probe whether Defendants are "disingenuously splitting hairs regarding use of 'No Rush Shipping' versus other shipping options like Amazon Day."  *Id.* ¶ 16.  But Plaintiff does not elaborate why it would rescue her claims to probe into this subject.  Plaintiff made no allegations in the TAC regarding Amazon Day, and Plaintiff's opposition does not discuss the pertinence of Amazon Day for her claims.  She did not, for example, suggest that it was Amazon Day shipping that caused her enrollment in Audible, nor did she suggest that it was the universe of Amazon's shipping options that did so.  And moreover, as discussed above, Plaintiff has not come up with any evidence that she was enrolled into Audible by selecting a shipping option on Amazon's website, as opposed to when she opted into an Audible trial, as in Defendant's telling.

Second, Plaintiff  says that she needs to uncover "how Plaintiff was somehow taken to 'Audible's website, through the internet browser on her mobile device.'" Dkt. # 171 ¶ 17 (citing Dkt. # 165 (Eland Declaration) ¶ 21).  First, uncontroverted evidence explains how she was enrolled in Audible: By visiting its website on her mobile browser and tapping through the requisite screens.  *See* Dkt. # 165 ¶¶ 21–27.  Also, this allegation regarding how she was "somehow taken" to the Audible website does not relate to any of her claims as pleaded in the TAC or form part of her primary theory, which focuses on the usage of No-Rush Shipping and resulting digital rewards, not any purported surreptitious transfer from the Amazon to Audible websites.  Plaintiff also seeks to depose Mr. Eland because of two purported inconsistencies in his declaration.  *See id.* ¶¶ 19–20, 23–24, 28.  Again, Plaintiff does not argue that the resolution

ORDER - 20

of any of these purported discrepancies would furnish facts by which to defeat Defendants' summary judgment motion. The first purported inconsistency regards changes over time in the Audible enrollment process, but, as discussed below, only that process as Plaintiff experienced it is pertinent to her claim. The other purported inconsistency regards Mr. Eland's participation in a working group that Plaintiff suspects oversaw aspects of Audible enrollment. *Id.* ¶ 22. But Plaintiff fails to connect the working group with her claims and her theory in the TAC beyond general assertions of relevance.

Third, Plaintiff seeks discovery into how the ARL-required disclosures changed throughout the class period, including by deposing Mr. Eland. She points to an inconsistency between his statement that the Audible enrollment process has not substantially changed from May 2018 to the present and one of Defendants' admissions, *id.* ¶ 19, but any changes in that process is not pertinent to Plaintiff's individual claims. She makes no other argument as to why an answer to the purported contradiction would provide an essential fact to survive summary judgment. Moreover, as covered above, sufficient discovery has been taken of the disclosures that Plaintiff herself saw when she transacted with Defendants regarding Audible.

In summary, none of the cited statements in Plaintiff's counsel's declaration "explain why" the facts gestured at "would preclude summary judgment." *Stein*, 906 F.3d at 833 (citation omitted). They do not appear to be essential to her case theory, since they are not pertinent to any specific claims but appear only to provide circumstantial or other general information. Thus, Rule 56(d) does not provide a basis to deny or continue Defendants' request for summary judgment.

## IV
### CONCLUSION

For the reasons above, the Court

ORDER - 21

(1) GRANTS Defendants' Motion for Summary Judgment (Dkt. # 153).

(2) DISMISSES Plaintiff's TAC (Dkt. # 96) and all claims therein with prejudice.

Dated this 9th day of July, 2026.

John H. Chun
United States District Judge

ORDER - 22